Benjamin A. Blair (18853)
FAEGRE DRINKER BIDDLE & REATH LLP
300 N. Meridian St., Suite 2500
Indianapolis, IN 46204
Tel.: 317.237.0300
Benjamin.blair@faegredrinker.com

*Attorneys for Defendant Massachusetts Mutual*
*Life Insurance Company*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| RICHARD F. RUSSELL, <br><br> Plaintiff, <br><br> v. <br><br> MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, <br><br> Defendants. | **DEFENDANT MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT** <br><br> Case No. 4:24-cv-00098-AMA-PK <br><br> District Judge Ann Marie McIff Allen <br> Magistrate Judge Paul Kohler |

Defendant Massachusetts Mutual Life Insurance Company ("MassMutual"), through its undersigned counsel, responds to and answers Plaintiff's Complaint as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Dr. Russell is a citizen and resident of the state of Utah, residing in Washington County, Utah.

**Response:** Admitted upon information and belief.

2.     Defendant MassMutual is a foreign corporation organized pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business in Springfield, Massachusetts.

**Response:** Admitted.

3.     MassMutual does business in the state of Utah.

**Response:** Denied as stated. By way of further response, MassMutual was at all relevant times hereto authorized to do business in the State of Utah.

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as Dr. Russell is a citizen of the state of Utah and, for purposes of diversity jurisdiction, MassMutual is a citizen of the state of Massachusetts, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Response:** Admitted.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims asserted herein

occurred in Washington County, Utah, and MassMutual is subject to this Court's personal jurisdiction given its contacts with the state of Utah.

**Response:** Denied in part; admitted in part. MassMutual admits only that venue is proper in this Court. The remaining averments are denied.

## FACTS

**A.     Dr. Russell Purchases the Disability Policies.**

6.     In 1988, while practicing full-time as a physician specializing in anesthesiology, Dr. Russell purchased a Disability Income Policy, No. 4794017 ("Policy #1"). (See Policy #1, attached hereto as **Exhibit A**.)

**Response:** Denied in part; admitted in part. MassMutual admits only that Policy Number 4794017 was issued to Plaintiff by Connecticut Mutual Life Insurance Company in 1988. MassMutual is the successor in interest to Connecticut Mutual Life Insurance Company. MassMutual denies that Exhibit A is a true and correct copy of Policy #1. After reasonable inquiry, MassMutual denies knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph.

7.     The effective date of Policy #1 was October 11, 1988. (Id.)

**Response:** Admitted.

8.     At the time he purchased Policy #1, Dr. Russell also purchased a Cost of Living Adjustment Rider ("COLA Rider"). (Id.)

**Response:** Denied. By way of further response, Policy #1 includes a Cost of Living Rider ("COLA Rider").

9. At the time he purchased Policy #1, Dr. Russell also purchased a Lifetime Total Disability Benefits Rider ("Lifetime Rider"). (Id.)

**Response:** Admitted.

10. Policy #1 provided base benefits in the initial amount of $10,000 per month ("Base Policy Benefits").

**Response:** Denied. Policy #1 is a document that speaks for itself. To the extent the averments in this paragraph are inconsistent with Policy #1, such averments are denied.

11. Pursuant to the benefits afforded under the COLA Rider, Policy #1 was augmented with a five percent (5%) annual increase of the Base Policy Benefits.

**Response:** Denied. Policy #1, including the COLA Rider, is a document that speaks for itself. To the extent the averments in this paragraph are inconsistent with Policy #1, such averments are denied.

12. In 1990, while still practicing full-time as a physician specializing in anesthesiology, Dr. Russell purchased an additional Disability Income Policy, No. 4908915 ("Policy #2").[1] (See Policy #2, attached hereto as **Exhibit B**.)

---

[1] Policy #1 and Policy #2 shall be referred to herein either individually as defined, or collectively as "Policies."

**Response:** Denied in part; admitted in part. MassMutual admits only that Policy Number 4908915 was issued to Plaintiff by Connecticut Mutual Life Insurance Company in 1990. MassMutual is the successor in interest to Connecticut Mutual Life Insurance Company. MassMutual denies that Exhibit B is a true and correct copy of Policy #2. After reasonable inquiry, MassMutual denies knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph.

13. The effective date of Policy #2 was January 15, 1990. (Id.)

**Response:** Admitted.

14. As he did with Policy #1, at the time he purchased Policy #2, Dr. Russell also purchased a COLA Rider. and a Lifetime Rider. (Id.)

**Response:** Denied as stated. By way of further response, Policy #2 includes a Cost of Living Rider ("COLA Rider").

15. As he did with Policy #1, at the time he purchased Policy #2, Dr. Russell also purchased a Lifetime Rider. (Id.)

**Response:** Admitted.

16. Policy #2 provided Base Policy Benefits in the amount of $2,500 per month.

**Response:** Denied. Policy #2 is a document that speaks for itself. To the extent the averments in this paragraph are inconsistent with Policy #2, such averments are denied.

17. Pursuant to the benefits afforded under the COLA Rider, Policy #1 [sic] was augmented with a five percent (5%) annual increase of the Base Policy Benefits.

**Response:** Denied. Policy #2, including the COLA Rider, is a document that speaks for itself. To the extent the averments in this paragraph are inconsistent with Policy #2, such averments are denied.

18. The Policies were purchased through Connecticut Mutual Life Insurance, which upon information and belief, later merged with or was otherwise acquired by MassMutual, who then acquired interest in and responsibility/obligation for the Policies.

**Response:** Denied as stated. MassMutual admits only that it is the successor in interest to Connecticut Mutual Life Insurance Company. The remaining averments in this paragraph are denied.

**B.     Language Under the Policies.**

19. The Policies each contain a "coverage page" that, with the exception of dates and dollar amounts, is identical to one another:

COVERAGE PAGE

INSURED    RICHARD F RUSSELL              4794017    POLICY NUMBER
DISABILITY INCOME POLICY

DATE OF ISSUE      SEP 27, 1988                    AGE   31
DATE OF REISSUE    OCT 20, 2010

| EFFECTIVE DATE | COVERAGE | MONTHLY BENEFIT | WAITING PERIOD | MAXIMUM* BENEFIT PERIOD | ANNUAL PREMIUM | PAYABLE TO YEAR |
|---|---|---|---|---|---|---|
| OCT 11 1988 | BASIC MONTHLY BENEFIT | $10,000 | 90 DAYS | TO 66 | $9,022.00 | 2021 |
|  | ADDITIONAL BENEFITS - SEE ATTACHED RIDERS FOR DETAILS- | | | | | |
| OCT 11 1988 | PARTIAL DISABILITY | $5,000 | 90 DAYS | | $432.00 | 2021 |
| OCT 11 1988 | OPTIONS TO BUY ADDITIONAL BENEFITS | | | | | |
|  | TOTAL ADDITIONAL BENEFITS | $5,000 | | | $124.50 | 2011 |
| OCT 11 1988 | LIFETIME ACCIDENT/SICKNESS | $10,000 | | | $504.00 | 2021 |
| OCT 11 1988 | COST OF LIVING RIDER MAXIMUM  8.00 % | | | | $720.00 | 2021 |
| OCT 11 1988 | OWN OCCUPATION/ PRESUMPTIVE DIS RIDER | $10,000 | | | $335.00 | 2021 |

YOUR MAXIMUM MONTHLY BENEFIT IS $10,000       TOTAL ANNUAL PREMIUM  $5,137.50
                                              QUARTERLY PREMIUM  $1,361.44

*YOUR BENEFIT PERIOD FOR DISABILITY IS YOUR SPECIFIED BENEFIT PERIOD, BUT NOT
BEYOND OCT 11 2022.  HOWEVER, THE BENEFIT PERIOD FOR YOUR MONTHLY BENEFIT
WILL BE AT LEAST 24 MONTHS.

YOUR BENEFIT PERIOD MAY BE EXTENDED BEYOND OCT 11 2022 IF YOU QUALIFY FOR BENEFITS
UNDER THE LIFETIME ACCIDENT/SICKNESS RIDER.  SEE YOUR RIDER FOR DETAILS.

YOUR PREMIUM IS BASED ON NON-SMOKER RATES, DISCOUNTED BY 10% FROM THE SMOKER RATES.

YOUR OPTIONS TO BUY ADDITIONAL BENEFITS OPTION PERIOD OCCURS EACH YEAR FROM 60 DAYS
BEFORE UNTIL 30 DAYS AFTER OCT 11 UNTIL THE OPTION PERIOD ON THE POLICY ANNIVERSARY
ON OR AFTER YOUR 55TH BIRTHDAY.  SEE YOUR RIDER FOR DETAILS.

**Response:**  Denied in part; admitted in part.  MassMutual admits only that

the Policies each contain a Coverage Page.  The Policies, including the Coverage

Pages, are documents that speak for themselves.  To the extent the averments in

this paragraph are inconsistent with the Policies, such averments are denied.

20.    The Policies also contain the following identical sections:

## PART 7—GENERAL RULES

*PART 7 contains general rules that apply.*

**The Owner.** You (the insured) are the owner of this policy.

**The Entire Contract.** The entire contract consists of: The policy. The application. Any attached riders, endorsements and other papers.

**Total Disability Benefit.** You must be totally disabled and have been totally and/or partially disabled for the full waiting period. We'll pay the first monthly benefit one month after the waiting period ends. You'll get benefits as long as you're totally disabled. But we'll pay only up to the maximum benefit period. You won't get a larger benefit if you're disabled due to more than one cause.

Each monthly payment made during the first 12 months of total disability will equal your basic monthly benefit shown on the Coverage Page.

**Maximum Benefit Period:** The maximum length of time we'll pay benefits, whether for total disability, residual disability or a combination of both.

**Response:** Denied in part; admitted in part. MassMutual admits only that the Policies contain the provisions appearing in this paragraph. The Policies are documents that speak for themselves. To the extent the averments in this paragraph are inconsistent with the Policies, including the remaining provisions of the Policies, such averments are denied.

21. The COLA Rider, purchased with both Policies, includes the following language:

**COST OF LIVING RIDER**

This rider provides monthly benefit increases while you're totally or residually disabled. We discuss total and residual disability in PART 2 of your policy. All definitions in PART 1 of your policy apply to this rider.

**Premiums.** This rider is made a part of your policy in consideration of your application and premium payments. A copy of your application is attached to and made a part of your policy. The annual premium and the effective date for this rider are shown on the Coverage Page of your policy. If you applied for this rider after the policy's effective date, we'll send you a new Coverage Page. Premiums for this rider must be paid along with the premiums for your policy. If you keep your policy in effect after this rider ends, you'll no longer pay the premium for this rider.

**Response:** Denied in part; admitted in part. MassMutual admits only that the Policies' COLA Riders contain the provisions appearing in this paragraph. The Policies are documents that speak for themselves. To the extent the averments in this paragraph are inconsistent with the Policies, including the remaining provisions of the Policies, such averments are denied.

22. The Lifetime Rider, purchased with both the Policies, includes the following language:

**LIFETIME TOTAL DISABILITY BENEFITS RIDER**

This rider provides monthly total disability benefits to be paid beyond the Anniversary on or after your 65th birthday. Benefits will be paid for life. We discuss disability benefits in PART 2 of your policy. All definitions in your policy apply to this rider.

**Monthly Total Disability Benefit.** The largest amount of monthly benefit you will receive under this rider is shown on the current Coverage Page of your policy. You will receive this amount if you become totally disabled before the Anniversary on or after your 55th birthday.

**Response:** Denied in part; admitted in part. MassMutual admits only that the Policies' Lifetime Riders contain the provisions appearing in this paragraph. The Policies are documents that speak for themselves. To the extent the averments in this paragraph are inconsistent with the Policies, including the remaining provisions of the Policies, such averments are denied.

23. Per the terms of the Policies, the coverage pages, the COLA Rider, and the Lifetime Rider, are considered to be the "entire contract."

**Response:** Denied.

24. Accordingly, based on the language in the Policies, i.e., the "entire contract," Dr. Russell is entitled to be paid both the Base Policy Benefits and the COLA Rider benefit increases for the rest of Dr. Russell's lifetime.

**Response:** Denied.

**C. Dr. Russell's Disability and MassMutual's Payment Under the Policies.**

25. In 1996, while practicing as a physician, and while both Policies were active and in force, Dr. Russell was in a severe car accident, causing traumatic brain damage.

**Response:** Denied in part; admitted in part. MassMutual admits only that the Policies were in force in 1996 and that Plaintiff was in an accident. After reasonable inquiry, MassMutual denies knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph.

26. As a result of his accident, Dr. Russell became totally and permanently disabled.

**Response:** Denied in part; admitted in part. MassMutual admits only that it received a claim for benefits under the Policies from Plaintiff and that it approved Plaintiff's claims because he was Totally Disabled under the Policies and was entitled to benefits. The remaining averments in this paragraph are denied.

27. MassMutual determined, per the Policies, that Dr. Russell had in fact become totally and permanently disabled as a result of his accident, and was (and is) entitled to benefits.

**Response:** Denied in part; admitted in part. MassMutual admits only that it received a claim for benefits under the Policies from Plaintiff and that it approved Plaintiff's claims because he was Totally Disabled under the Policies and was entitled to benefits. The remaining averments in this paragraph are denied.

28. Beginning in 1996, MassMutual began paying Dr. Russell his monthly benefits under the Policies.

**Response:** Denied in part; admitted in part. MassMutual admits only that in 1996, MassMutual paid the Basic Monthly Benefit pursuant to the Policies' terms. The remaining averments in this paragraph are denied.

29. In 1996, Dr. Russell received $12,500 per month, which was the combined Base Policy Benefits amounts from Policy #1 and Policy #2.

**Response:** Denied in part; admitted in part. MassMutual admits only that in 1996, MassMutual paid the Basic Monthly Benefit pursuant to the Policies' terms. The remaining averments in this paragraph are denied.

30. From 1997 up to 2022, MassMutual increased the dollar amount of Dr. Russell's monthly benefits by five percent (5%) per year, in accordance with the COLA Rider for the Policies.

**Response:** Denied in part; admitted in part. MassMutual admits only that from 1997 to 2022, MassMutual paid monthly benefit increases under the Policies' COLA Riders. The remaining averments in this paragraph are denied.

31. By September 2022, Dr. Russell, as per the terms of the Policies, was receiving $44,450.00 per month.

**Response:** Admitted.

32. Dr. Russell's monthly benefit amount was to continue increasing annually per the COLA Rider and Lifetime Rider.

**Response:** Denied.

33. Dr. Russell paid all premiums on the Policies as per the terms therein.

**Response:** Denied in part; admitted in part. MassMutual admits only that it received sufficient premium payments for the Policies, including the Lifetime Riders and COLA Riders. After reasonable inquiry, MassMutual denies knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph.

**D. Denial of Benefits and Communication with MassMutual.**

34. In April 2014, MassMutual wrote to Dr. Russell suggesting that while Dr. Russell's Base Policy Benefits under the Policies would cease following Dr. Russell's 65th birthday (August 1, 2022), he would continue to receive disability benefits for life pursuant to the Lifetime Rider. Specifically:

> The disability benefits from your base policy will cease on the policy anniversary on or following your 65th birthday. Our records indicate this is October 11, 2022 for policy 4794017 and January 15, 2023 for policy 4908915. However, you purchased your policy with the Lifetime Total Disability Benefits Rider. This rider will provide monthly disability benefits after that date, for life, if you meet the eligibility requirements of the rider both prior to and after your policy anniversary on or after your 65th birthday.

**Response:** Denied in part; admitted in part. MassMutual admits only that it sent a letter to Plaintiff dated April 4, 2014. The April 4, 2014 letter is a document that speaks for itself. To the extent the averments in this paragraph are inconsistent with the April 4, 2014 letter, such averments are denied.

35. Confused by this correspondence from MassMutual, Dr. Russell, through the individual who sold Dr. Russell the Policies, Mr. Paul Spero, communicated with MassMutual about the application of his COLA Rider benefits to the information presented in the April 2014 letter.

**Response:** Denied.

36. On October 21, 2014, MassMutual, through its agent Kayla DiPaulo (MassMutual Central New York Agency), responded by stating:

> I did not forget about the question you had regarding Richard Russell's policy. To answer your questions, his benefit IS a lifetime benefit, however COLA falls off at age 65. He continues to get whatever the monthly benefit is when he is 65, for life. Not a bad deal!

(See MassMutual Email Correspondence, attached hereto as Exhibit C) (emphasis in original.)

**Response:** Denied in part; admitted in part. MassMutual admits only that Plaintiff attached to the Complaint purported email correspondence between Paul Spero and Kayla DiPaulo from October 21 to October 22, 2014. After reasonable

inquiry, MassMutual denies knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph, including but not limited to the circumstances surrounding the email correspondence.

37. Mr. Spero, still with questions, responded by stating and asking:

Thanks for getting back to me....I guess to Richard Russell the monthly income on the base was I believe $12500, the COLA has increased it to over double that....so at 65 it drops back to the $12500 or does it stay where it is and no longer increases? I guess the COLA falls off question is where we are confused....

*(Id.)*

**Response:** Denied in part; admitted in part. MassMutual admits only that Plaintiff attached to the Complaint purported email correspondence between Paul Spero and Kayla DiPaulo from October 21 to October 22, 2014. After reasonable inquiry, MassMutual denies knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph, including but not limited to the circumstances surrounding the email correspondence.

38. MassMutual, through its agent Kayla DiPaulo (MassMutual Central New York Agency), responded again by stating:

To answer your question, at age 65, Richard's monthly benefit stays where it's at for the remainder of the lifetime benefit. So say it's

$25,000/mo. at age 65 because of COLA, it will stay at that $25,000 for the rest of his life, at least that is how our contact at home office explained it.

*(Id.)*

**Response:** Denied in part; admitted in part. MassMutual admits only that Plaintiff attached to the Complaint purported email correspondence between Paul Spero and Kayla DiPaulo from October 21 to October 22, 2014. After reasonable inquiry, MassMutual denies knowledge or information sufficient to form a belief as to the truth of the remaining averments in this paragraph, including but not limited to the circumstances surrounding the email correspondence.

39. While *both* accrued *and continued* increases of Dr. Russell's monthly benefits are extended per the COLA Rider and Lifetime Rider, MassMutual conceded through its agent that at the very least, the language of the Lifetime Rider to the Policies does in fact apply to the COLA Rider for at least those increases that had accrued as of Dr. Russell's 65th birthday.

**Response:** Denied.

40. On August 1, 2022, Dr. Russell turned 65 years old.

**Response:** Admitted upon information and belief.

41. After turning age 65, on October 11, 2022, and then again on January 15, 2023, (the Policies' respective anniversaries), MassMutual reduced Dr. Russell's

monthly benefits to a total of only $12,500 per month between the two Policies, which was the amount Dr. Russell received at the very outset of the payment of benefits, back in 1996.

**Response:** Denied.

42. In March 2023, Dr. Russell communicated with MassMutual, briefly explaining his objection to MassMutual's reduction of his benefits under the Policies.

**Response:** Denied in part; admitted in part. MassMutual admits only that Plaintiff, through his counsel, sent a letter dated March 31, 2023, to MassMutual. The March 31, 2023 letter is a document that speaks for itself. To the extent the averments in this paragraph are inconsistent with the March 31, 2023 letter, such averments are denied. The remaining averments in this paragraph are denied.

43. On September 13, 2024, Dr. Russell again communicated with MassMutual, this time setting forth in more detail his objection to MassMutual's reduction of his benefits under the Policies, demanding that it resume paying Dr. Russell in full as per the terms of the Policies, and as it was previously, which includes payment of the Base Policy Benefits increased accordingly by the COLA Rider, for life.

**Response:** Denied in part; admitted in part. MassMutual admits only that Plaintiff, through his counsel, sent a letter dated September 13, 2024, to

MassMutual.  The September 13, 2024 letter is a document that speaks for itself. To the extent the averments in this paragraph are inconsistent with the September 13, 2024 letter, such averments are denied.  The remaining averments in this paragraph are denied.

44.    On September 26, 2024, MassMutual responded to Dr. Russell's September 13, 2024 letter, in which it stated that: "We have determined that the Lifetime Total Disability Benefits are being paid correctly in accordance with the terms of the contract."

**Response:**  Denied in part; admitted in part.  MassMutual admits only that it sent a letter to Plaintiff, through his counsel, dated September 26, 2024.  The September 26, 2024 letter is a document that speak for itself.  To the extent the averments in this paragraph are inconsistent with the September 26, 2024 letter, such averments are denied.  The remaining averments in this paragraph are denied.

45.    MassMutual stated further in its September 26, 2024 letter that:

In accordance with the terms of the Cost Of Living Rider, the benefit increase payments from this rider will cease on October 11, 2022 under policy number 4794017 and January 15, 2023 under policy number 4908915, the policy anniversary on or following your 65th birthday, assuming you remain disabled until that date. After this date, any benefits accrued under the Cost Of Living Rider will cease and your

monthly benefit will be potentially paid only under the Lifetime Total Disability Benefits Rider.

**Response:** Denied in part; admitted in part. MassMutual admits only that it sent a letter to Plaintiff, through his counsel, dated September 26, 2024. The September 26, 2024 letter is a document that speak for itself. To the extent the averments in this paragraph are inconsistent with the September 26, 2024 letter, such averments are denied. The remaining averments in this paragraph are denied.

46. On October 24, 2024, Dr. Russell responded to MassMutual's September 26, 2024 letter, rebutting MassMutual's assertions and again demanding that it resume paying Dr. Russell in full as per the terms of the Policies, and as it was previously, which includes payment of the Base Policy Benefits increased accordingly by the COLA Rider, for life.

**Response:** Denied in part; admitted in part. MassMutual admits only that Plaintiff, through his counsel, sent a letter dated October 24, 2024, to MassMutual. The October 24, 2024 letter is a document that speaks for itself. To the extent the averments in this paragraph are inconsistent with the October 24, 2024 letter, such averments are denied. The remaining averments in this paragraph are denied.

47. On November 1, 2024, MassMutual responded to Dr. Russell's October 24, 2024 communication, maintaining its position that COLA benefits cease on the

anniversary on or after Dr. Russell's 65th birthday, and that Dr. Russell is only entitled to the $12,500 Base Policy Benefits amount.

**Response:** Denied.

48. As a direct and proximate result of MassMutual's breaches and violative conduct, Dr. Russell has been damaged in an amount to be proven at trial, but in no event less than $800,000.00 for denied benefits, which does not include damages that are ongoing based on MassMutual's continuing failure to pay those amounts due to Dr. Russell on a monthly basis under the terms of the Policies.

**Response:** Denied.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

12. Dr. Russell incorporates by reference all foregoing paragraphs.

**Response:** MassMutual incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

13. Dr. Russell fulfilled all conditions and obligations for receipt of benefits under the Policies.

**Response:** Denied. The allegations in this paragraph are a legal conclusion to which no response is required. To the extent a response is deemed required, MassMutual denies the allegations.

14. MassMutual wrongfully denied Dr. Russell the benefits under the Policies by failing to pay to him the full amounts owed under the terms therein, including both the Base Policy Benefits and the monthly benefit increases under the COLA Rider, for life under the Lifetime Rider.

**Response:** Denied.

15. As a direct and proximate result of MassMutual's denial of benefits under the Policies, Dr. Russell has been damaged in the form of denied benefits, prejudgment interest, and his attorneys' fees and costs in bringing and prosecuting this underlying action.

**Response:** Denied.

## SECOND CLAIM FOR RELIEF

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

16. Dr. Russell incorporates by reference all foregoing paragraphs.

**Response:** MassMutual incorporates by reference its responses to the preceding paragraphs as if fully set forth herein.

17. Dr. Russell and MassMutual are parties to the Policies, which are valid contracts, and therefore, entered into a contractual relationship.

**Response:** Denied. The allegations in this paragraph are a legal conclusion to which no response is required. To the extent a response is deemed required, MassMutual denies the allegations.

18.     Dr. Russell, at all relevant times, fully performed its obligations under the Policies.

**Response:**  Denied.  The allegations in this paragraph are a legal conclusion to which no response is required.  To the extent a response is deemed required, MassMutual denies the allegations.

19.     Inherent in the Policies is an implied covenant of good faith and fair dealing that Dr. Russell and MassMutual would act in good faith and with reasonable efforts to perform their contractual duties and adhere to the terms of the contracts, and not impair the rights of the other party to receive the rights, benefits, and reasonable expectations under the Policies.

**Response:**  Denied.  The allegations in this paragraph are a legal conclusion to which no response is required.  To the extent a response is deemed required, MassMutual denies the allegations.

20.     As alleged herein, MassMutual breached the implied covenant of good faith and fair dealing by, *inter alia*, failing to pay to Dr. Russell the full amounts owed under the terms therein, including both the Base Policy Benefits and the monthly benefit increases under the COLA Rider, for life under the Lifetime Rider.

**Response:**  Denied.

21.     As a direct and proximate result of MassMutual's denial of benefits under the Policies, Dr. Russell has been damaged in the form of denied benefits,

prejudgment interest, and his attorneys' fees and costs in bringing and prosecuting this underlying action.

**Response:** Denied.

## PRAYER FOR RELIEF

WHEREFORE, MassMutual prays for relief as follows:

1.     That Plaintiff take nothing by reason of his Complaint;

2.     That MassMutual be awarded judgment in this action and the Complaint be dismissed by with prejudice;

3.     That MassMutual be awarded costs of suit incurred in this action; and

4.     That MassMutual be awarded such other and further relief as the Court may deem just and proper.

## <u>AFFIRMATIVE DEFENSES</u>

MassMutual has not yet completed substantial discovery.  Without admitting any of the allegations in the Complaint, MassMutual alleges each of the following as affirmative defenses, expressly reserving all of its rights to allege additional defenses, and or/to seek leave of Court to amend to allege additional defenses, when and if facts supporting such defenses become known to it.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiff's claims are barred, in whole or in part, because the Complaint fails to allege facts sufficient to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Laches, Waiver, or Estoppel)

Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, or estoppel.

## THIRD AFFIRMATIVE DEFENSE

### (Claims Precluded by Terms of the Policies)

Plaintiff's claims are barred, in whole or in part, by the terms of the Policies because, *inter alia*, the COLA Riders state that MassMutual will not pay monthly benefit increases under the COLA Riders after the Policies' anniversaries on or after Plaintiff's 65th birthday, and the COLA Riders terminated on the Policies' anniversaries on or after Plaintiff's 65th birthday.

## FOURTH AFFIRMATIVE DEFENSE

### (Good Faith)

Plaintiff's claims, including his claim for attorney's fees, are barred in whole or in part because, at all relevant times, MassMutual acted and carried out its obligations in good faith.

## FIFTH AFFIRMATIVE DEFENSE

## (No Attorneys' Fees)

Plaintiff fails to state a claim upon which attorneys' fees can be awarded.

## SIXTH AFFIRMATIVE DEFENSE

## (Reasonable Conduct)

MassMutual's conduct was reasonable and was not arbitrary and capricious or an abuse of discretion.

## SEVENTH AFFIRMATIVE DEFENSE

## (No Breach of Contract)

Plaintiff's claims are barred because MassMutual did not breach any contract. MassMutual acted in accordance with the plain and unambiguous terms of the Policies.

## EIGHTH AFFIRMATIVE DEFENSE

## (No Causation)

Plaintiff's claims are barred, in whole or in part, because to the extent any of Plaintiff's alleged damages were allegedly caused by the acts or omissions of MassMutual, there was a superseding and/or intervening cause for such damages for which MassMutual bears no obligation, responsibility, or liability.

## NINTH AFFIRMATIVE DEFENSE

## (Conditions Precedent)

Plaintiff's claims fail because he failed to satisfy conditions precedent.

## TENTH AFFIRMATIVE DEFENSE

## (Unjust Enrichment)

Plaintiff's claims are barred, in whole or in part, because a remedy thereon would constitute unjust enrichment, as MassMutual correctly applied the terms and conditions of the Policies, including the setting of premiums for the Policies and the riders.

## ELEVENTH AFFIRMATIVE DEFENSE

## (Full Performance)

Plaintiff's claims are barred, in whole or in part, because, to the extent MassMutual owed any obligations to Plaintiff, such obligations have been fully, completely, and properly performed in every respect.

## TWELFTH AFFIRMATIVE DEFENSE

## (Reservation of Rights)

MassMutual has not knowingly or voluntarily waived any applicable affirmative defense and reserve their right to assert and rely upon such other applicable affirmative defenses as may become available or apparent during the course of this action.

WHEREFORE, Defendant Massachusetts Mutual Life Insurance Company denies that Plaintiff is entitled to judgment in any sum whatsoever and prays that this Court enter an order denying his claims and granting such other and further relief as this Court deems fair and just under the circumstances.

January 21, 2024

/s/ *Benjamin A. Blair*
Benjamin A. Blair
FAEGRE DRINKER BIDDLE & REATH LLP
*Attorneys for Defendant Massachusetts Mutual Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 21, 2024, I electronically filed the foregoing, DEFENDANT MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT, using the court's CM/ECF system, which provides a copy to the following:

Christopher S. Hill (9931)
Zachary C. Lindley (17261)
KIRTON MCCONKIE
36 S. State St., Ste. 1900
Salt Lake City, UT 84111
Tel.: 801.328.3600
chill@kmclaw.com
zlindley@kmclaw.com

*/s/ Benjamin A. Blair*_____